IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

SHANON FURLONG,

                          Plaintiff,

                                                    Civil Action No.
        v.                                          5:12-CV-0223 (DNH/DEP)

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
300 S. State Street                         MICHAEL J. TELFER, ESQ.
5th Floor, Suite 520
Syracuse, NY 13202

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN                    JOANNE JACKSON, ESQ.
United States Attorney                       Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]      Plaintiff's complaint named Michael J. Astrue, who at the time of filing
was Commissioner of Social Security, as the defendant. On February 14, 2013,
Carolyn W. Colvin took office as Acting Commissioner of Social Security. She has
therefore been substituted as the named defendant in this matter pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, and no further action is required in order
to effectuate this change. 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Shanon Marie Furlong, who suffers from chronic low back pain, the residual effects of scoliosis, for which she underwent surgery as a teenager, a cervical neck condition, stemming from a motor vehicle accident, and morbid obesity, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative determination denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments. In support of her challenge, plaintiff argues that the assigned administrative law judge ("ALJ"), whose decision forms the basis for the agency's determination, erred in his assessment of plaintiff's residual functional capacity ("RFC"), improperly rejecting certain opinions of her treating physician and her testimony concerning the limitations imposed by her medical conditions. She also contends that the ALJ's finding of no disability, which led to the denial of her application for benefits, was infected by those errors in that the hypothetical question posed to a vocational expert, who then opined regarding the availability of jobs that plaintiff is capable of performing, was based upon false assumptions concerning her work-related capabilities.

Having carefully reviewed the record now before the court in light of the parties' arguments, and applying the requisite level of deference owed to the Commissioner's determination, I find that the determination under review resulted from the application of proper legal principles, and is supported by substantial evidence.

## I.     BACKGROUND

Plaintiff was born in October, 1986. Administrative Transcript at 36, 144, 148, 174.[2]  At the time of the hearing in this matter, held on May 26, 2011, plaintiff was twenty-four years old.  AT 36. Plaintiff has been measured at various times as being between five feet one and one-half inches and five feet three inches tall, and her weight has ranged from a low of 192 pounds to as much as 218 pounds. *Id.* at 178, 250, 252, 280, 353. Plaintiff is single, and lives with her boyfriend and their four year old son in Fulton, New York. *Id.* at 36-37, 144, 148.

Plaintiff attended school through the twelfth grade, and received a general educational development ("GED") degree.[3] AT 37-38. After

_____

[2]      The administrative transcript, which was prepared and filed by the Commissioner and is comprised of the evidence and proceedings before the Social Security Administration in connection with this matter, Dkt. No. 9, will be cited in this report as "AT ___."

[3]      The record is equivocal as to whether the plaintiff received special education services while in school.  *Compare* AT 179 (reflecting that plaintiff did not

3

receiving her GED, she went on to become a certified nurses' assistant ("CNA"). AT 38.

Plaintiff's employment history is relatively sparse. She last worked in or about 2008, at which time she received assignments through a temporary employment service "a couple of times." AT 38, 180. Plaintiff also worked briefly as a cashier in a grocery store, as a CNA in a nursing home, in a housekeeping position, and as a receptionist for a seasonal tax preparation company. *Id.* at 38-39, 180.

Since childhood, plaintiff has suffered from scoliosis. AT 39, 309, 351. Plaintiff underwent surgery for that condition in 1998, at age 13, involving a pelvic fusion and two Herrington rod placements. *Id.* at 351, 353. Despite that surgical intervention, the condition has caused her to experience residual lower back pain. *Id.* at 309, 352. In addition, plaintiff suffers from tingling and numbness of her extremities. *Id.* at 42, 352; *but see id.* at 309 ("she does not complain of any numbness anywhere").

Plaintiff also suffers from anxiety and depression. AT 43, 250-51. While she does not currently undergo any treatment for those conditions, in the past she has been prescribed Paxil and Prozak, although she does

---

attend special education classes) *with* AT 37-38 (plaintiff testifying that she was classified as learning disabled and was not in regular education classes).

4

not like how those medications make her feel. *Id.* at 43.

Plaintiff has received treatment from several sources for her various medical conditions, including back pain. In addition, she has been prescribed a variety of medications for her pain, including Ultram, Percocet, Darvocet, Tramadol, Naproxen, Tylenol No. 3, Liderm patches, and Ibuprofen 800 mg. AT 281, 352.

Plaintiff has received treatment in the past from Dr. Padma Ram, whose treatment records for the plaintiff covering the period between November 19, 2007 through February 2, 2010 are included in the record.[4] AT 250-74, 280-308. Dr. Ram was asked by the agency to provide information concerning plaintiff's condition, but deferred for the most part to plaintiff's pain specialist. *Id.* at 280-86.

Plaintiff was referred by Dr. Ram to Dr. Sobhy, who treated her between February and April 2010, for pain management. AT 314-21. Dr. Sobhy conducted multiple EMG/nerve conduction studies, and recommended various strategies for dealing with plaintiff's pain, including a home exercise program, an aggressive regimen of physical therapy, and

---

[4] According to Dr. Ram, she first saw the plaintiff on October 15, 2004. AT 280. During an interview by Social Security personnel, however, plaintiff indicated that she first saw Dr. Ram in August, 2007. *Id.* at 182.

epideral and joint injections.[5] *Id.*

Plaintiff's primary care was transitioned from Dr. Ram to Dr. Hoplyn Beaton in or about April 2010. AT 335. Dr. Beaton saw the plaintiff periodically to address a variety of complaints from that point until at least December 2010. *Id.* at 327-46. On April 7, 2011, Dr. Beaton prepared an assessment concerning plaintiff's work-related capabilities. *Id.* at 356-63.

Plaintiff was also seen by Dr. Richard Tallarico, of Upstate Orthopedics, in November 2010, for both her neck and lower back pain. AT 351-55. Addressing her back, Dr. Tallarico noted that plaintiff is morbidly obese and that her weight is contributing "greatly to her discomfort to both her neck and her low back." AT 355. Dr. Tallarico suggested physical therapy as plaintiff's best treatment option, and referred her to one of his non-surgical partners "to address her conservative measures." *Id.*

At the request of the agency, plaintiff was examined by a

---

[5]     The only record evidence regarding the physical therapy undergone by plaintiff is from the Oswego Hospital Rehabilitation Services, covering the period from May 9, 2008 through June 30, 2008.  AT 242-49. Electrical stimulation was administered during the course of that physical therapy. *Id.* at 243, 352. In a summary concerning that physical therapy, it was noted that plaintiff persistently missed appointments, and failed to return calls from personnel at Oswego Hospital Rehabilitation Services. *Id.* at 249.

consultative physician, Dr. Kalyani Ganesh, on March 26, 2010. AT 309-13. Based upon that examination, Dr. Ganesh concluded plaintiff had "[n]o gross physical limitation [relat]ed to sitting, standing, or walking[, and] [m]oderate to severe limitation[s] in lifting, carrying, pushing, and pulling." AT 311.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff protectively filed applications for DIB and SSI benefits with the Social Security Administration on December 15, 2009, alleging that she is disabled as a result of back, neck, and shoulder pain, as well as numbness in her shoulders, hands and feet.[6]  AT 144-51, 178. Following the denial of those applications, *id.* at 61-70, a hearing was conducted at plaintiff's request on May 26, 2011, by ALJ David Shaw. *Id.* at 32-52.  At that hearing, testimony was received from the plaintiff, who was accompanied by a non-attorney representative, and James R. Newton, a vocational expert. *Id.*

On May 27, 2011, ALJ Shaw issued a written decision reporting his

---

[6]    Plaintiff's claims concerning her disability onset date are conflicting. In her DIB application, she alleged a disability onset date of April 24, 2008. AT 144, 178. Her SSI application, however, alleges that her disability began on January 1, 2007. *Id.* at 148.

findings based upon a *de novo* review of the available evidence. AT 19-27. In his decision, ALJ Shaw applied the now-familiar, five-step test for determining disability, concluding initially at step one that plaintiff met the insured status requirements under the Social Security Act through December 31, 2008, and has not engaged in substantial gainful activity since the alleged disability onset date of April 24, 2008. *Id.* at 21. ALJ Shaw next concluded that plaintiff's status post-surgery for scoliosis, morbid obesity, and cervicalgia constitute severe impairments imposing more than minimal restrictions on her ability to perform basic work-related activities, but found, at step three, that those impairments do not, either individually or in combination, meet or medically equal any of the listed, presumptively disabling impairments set forth in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 21-22.

Before proceeding to step four of the disability protocol, ALJ Shaw next surveyed the available evidence and concluded that despite her conditions, plaintiff retains the RFC to perform sedentary work, as defined in the Commissioner's regulations, restricted to simple tasks with an available sit/stand option, and with limited interaction with the general

public and co-workers.[7]  AT 22-26. In formulating his RFC finding, ALJ Shaw found plaintiff's claim that she is unable to work to be not fully credible in light of its inconsistency with both the medical record evidence and the extent of her daily activities. *Id.* at 25.

After concluding, at step four, that plaintiff has no significant past relevant work history, ALJ Shaw next examined whether the Commissioner's medical-vocational guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt, App. 2, would provide a suitable framework for determining disability. AT 26. Concluding that the grids would not, given the erosion of jobs in the occupational base upon which the grids are predicated in light of plaintiff's inability to perform a full range of sedentary work without limitation, ALJ Shaw turned to the testimony of vocational expert Dr.

---

[7]     Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period. Social Security Ruling 83-10.

Newton who, in response to a hypothetical question approximating plaintiff's characteristics and RFC, concluded that there are jobs available in the national economy for a person with plaintiff's qualifications, including as a table worker, a stuffer, and a patcher. *Id.* at 26-27. ALJ Shaw therefore concluded that plaintiff was not disabled at any relevant time, and is therefore ineligible for DIB and SSI benefits. *Id.*

ALJ Shaw's opinion became a final determination of the agency on January 10, 2012, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision. AT 1-3.

B.    This Action

Plaintiff commenced this action on February 2, 2012. Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer on June 6, 2012, accompanied by an administrative transcript of the proceedings and evidence before the agency when its determination was made. Dkt. Nos. 8, 9. With the filing of plaintiff's brief on July 23, 2012, Dkt. No. 12, and that on behalf of the Commissioner on September 27, 2012, Dkt. No. 14, the matter is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(d). *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.

*Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level*. See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

B.     Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* at §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a

14

severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* at §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id. at* §§ 404.1520(d), 416.920(d), Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Id.* at §§ 404.1520(d), 416.920(d); *see also Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent

upon the agency to prove that the claimant is capable of performing other work. *Burgess*, 537 F.3d at 118; *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

     C.     <u>The Evidence in This Case</u>

In support of her challenge to the Commissioner's determination, plaintiff argues principally that (1) the ALJ failed in his obligation to complete the record by seeking an opinion from Dr. Ram concerning plaintiff's limitations; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ improperly assessed plaintiff's credibility. Plaintiff claims that those errors led to an unsupported finding, at step five, that she is capable of performing available work, and therefore is not disabled.

     1.     <u>Failure to Develop the Record</u>

By statute, an ALJ is under an obligation not only to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is]

necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).  The duty to develop the record includes the requirement that an ALJ take reasonable measures to obtain a report from a claimant's treating physician. *Nelson v. Astrue*, No. 09-CV-0909, 2010 WL 3522304, at *8 (N.D.N.Y. Aug. 12, 2010) (Lowe, M.J.) (citing *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002)). The lack of a medical source statement, however, does not *per se* represent a basis to set aside an ALJ's determination provided that it is otherwise defensible and based upon "sufficient" and "consistent" evidence*. Streeter v. Comm'r of Soc. Sec.,* No. 07-CV-0858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011) (Scullin, J.).

The record in this case reveals that the Commissioner made reasonably diligent efforts to gather available medical evidence pertaining to plaintiff's condition. AT 322-26. In addition, the Commissioner sought additional development of the record by arranging for the plaintiff to be consultatively examined at the agency's expense. *Id.* at 313-17. In this instance, the alleged gap in the record does not prove fatal to the Commissioner's determination. The record reveals that plaintiff stopped

treating with Dr. Ram in or about February 2010, more than twelve months prior to the date of the hearing. And, significantly, the record contains an assessment, completed on a function-by-function basis as required, from Dr. Beaton, who assumed the role of plaintiff's primary physician in April 2010. *Id.* at 56, 62. This fact readily distinguishes the instant action from such cases as *Nelson*, in which no detailed functional assessment from any treating source was available. 2010 WL 3522304, at *9. In sum, the ALJ's failure to obtain a medical source statement from Dr. Ram is not fatal to the Commissioner's determination in this instance, given the availability of a function-by-function assessment from Dr. Beaton, in combination with the consultative report of Dr. Ganesh from March 2010, both of which are supported by sufficient evidence. *Streeter*, 2011 WL 1576959, at *3.

## 2. RFC Determination

Plaintiff next challenges the ALJ's RFC determination, as claiming that it is not supported by substantial evidence. Plaintiff's disagreement with that finding centers upon the ALJ's decision to only partially credit Dr. Beaton's assessment concerning her work-related abilities.[8]

---

[8] Plaintiff does not challenge the mental components of the ALJ's RFC finding.

18

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities that address her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F.

Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J., *adopting report and recommendation by* DiBianco, M.J.)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

In this instance, the ALJ's RFC finding is supported by substantial evidence. Dr. Beaton, plaintiff's treating physician, has opined that she is capable of occasionally lifting and carrying up to ten pounds. AT 357. Dr. Beaton further concluded that plaintiff is able to sit, stand, and walk up to two hours in an eight hour work day. *Id.* at 358. Dr. Beaton's assessment does not suggest that plaintiff is unable to sit for longer periods of time, but instead reflects the need for her to change positions in order to round out an eight hour work day. *Id.* This requirement was taken into consideration in the ALJ's RFC finding. *Id.* at 22.

The ALJ's RFC findings also draw support from the reports of Dr. Sobhy, with whom plaintiff has consulted for pain management. On February 23, 2012, shortly after the filing of plaintiff's applications benefits, Dr. Sobhy reported that plaintiff had appropriate posture and a normal gait, her joints were normal, and, while cervical and lumbar spine range of motion produced moderate tenderness at mid-range, her muscle tone and

strength were normal. AT 314, 321. Electrodiagnostic testing conducted by Dr. Sobhy's office revealed no evidence of neuropathy, radiculopathy, plexopathy or myopathy. *Id.* at 315, 317.

Dr. Tallarico, with whom plaintiff consulted later in 2010, reported similar findings. On November 24, 2010, the date of plaintiff's initial visit, Dr. Tallarico wrote that plaintiff had good range of motion, with some mild kyphotic posturing noted. AT 351. Based upon his analysis of plaintiff's condition, Dr. Tallarico recommended a conservative course of treatment, including physical therapy for strengthening, weaning her from narcotic medications, and loss of weight. *Id.* Dr. Tallarico also reported on that date that plaintiff had good range of motion with forward flexion, hyperextension, lateral rotation, and lateral bending in her cervical region, a good range of motion with only mild discomfort with hyperextension, and no tenderness to palpation of the lumbosacral spine. *Id.* at 353. It was noted, moreover, that x-rays of plaintiff's lumbar spine were normal.[9] *Id.* at 354.

_____

[9]      Thoracic x-rays, taken on November 24, 2010, revealed intact hardware from plaintiff's prior scoliosis surgery, and x-rays of her cervical spine taken at the same time revealed only mild middle-cervical dextroscoliosis and mild degenerative disc disease at C4-6. AT 354. X-rays of plaintiff's lumbar spine from that same date were normal. *Id.*

Plaintiff challenges the ALJ's decision to accord only "some weight" to the opinions of Dr. Beaton. "With respect to the nature and severity of [a claimant's] impairment(s), the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[10] *Burgess*, 537 F.3d at 128 (internal quotations and alterations in original, citations omitted). "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Veino,* 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their

_____

[10]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] . . . in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the medical source has supported his or her opinion, (4) the degree of consistency between the opinion and the record as a whole, (5) whether the opinion is given by a specialist, and (6) other evidence which may be brought to the attention of the ALJ. 20 C.F.R. §§ 404.1527, 416.927. In addition, if the ALJ chooses to reject a treating physician's opinions, he must provide his reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ's failure to apply these legal standards when considering a treating physician's opinions constitutes a proper basis for reversal of an ALJ's determination. *Johnson*, 817 F.2d at  986; *Barnett*, 13 F. Supp. 2d at 316-17.

It is true, as plaintiff argues, that the ALJ could have been more specific in detailing which portions of Dr. Beaton's assessment were rejected as inconsistent with other record evidence. Nonetheless, it is

evident from the ALJ's RFC finding which portions were accepted, and which were rejected. It is the Commissioner's prerogative to weigh contradicting medical evidence and resolve any conflicts that arise. The Commissioner's determination should be upheld by a reviewing court provided that it draws the support of substantial evidence in the record. *Veino*, 312 F.3d at 586; *Williams*, 859 F.2d at 258; *Barnett*, 13 F. Supp. 2d at 314.

In this instance, the ALJ's RFC finding is supported in part by the opinions of plaintiff's primary treating physician, Dr. Beaton, and by those of Dr. Sohby and Dr. Tallarico, both of whom also qualify as treating sources. The ALJ's RFC finding, including the lack of any restriction of sitting, standing and walking, also draws support from the consultative opinions of Dr. Ganesh. Accordingly, I conclude that the ALJ's RFC determination is supported by substantial evidence and thus recommend rejection of plaintiff's second argument.

3. <u>Assessment of Plaintiff's Credibility</u>

Plaintiff lastly asserts that the ALJ improperly evaluated her subjective testimony that she is unable to work as a result of her disabling conditions.

It is well-established that an ALJ must take into account subjective complaints of pain in making the five step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979), *accord*, *Martone*, 70 F. Supp. 2d at 151. Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984). In exercising that discretion, the ALJ must consider a variety of factors including the claimant's "credibility and motivation, as well as the medical evidence of impairment[.]" *Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, J., *adopting report and recommendation by* Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must "reach an independent judgment concerning the true extent of the alleged pain and the degree to which it hampers the claimant's ability to engage in substantial gainful activity." *Sweatman*, 1998 WL 59461, at *5.

When a claimant's subjective statements are consistent with and supported by objective clinical evidence demonstrating that claimant has a

medical impairment that one could reasonably anticipate would produce such pain, they are entitled to considerable weight.[11] 20 C.F.R. §§ 404.1529(a), 416.929(a); *Barnett*, 13 F. Supp. 2d at 316. If the claimant's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including (1) daily activities; (2) location, duration, frequency and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Martone*, 70 F. Supp. 2d at 151. If such testimony is rejected, however, the ALJ must explicitly state the basis for

---

[11]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless she supplies medical or other evidence establishing the existence of a medical impairment that would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief are legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It is likely, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her back condition. The fact that she suffers from discomfort, however, does not automatically qualify her as disabled because "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance, the ALJ properly considered plaintiff's claims of disabling symptoms, and his rejection of those claims is both properly explained and well-supported. As was discussed above, plaintiff's medical care providers have advised her to pursue a conservative course of treatment, including a vigorous exercise and physical therapy regimen. Notably, reports of certain visits by the plaintiff to her treatment providers

make little or no reference to lumbar or cervical pain.[12]  AT 314, 321, 353.

I note, moreover, that plaintiff's complaints of pain are inconsistent with reports concerning her daily activities.  While during the hearing plaintiff testified that her boyfriend performs most of the household chores, AT 40, in March 2010, it was noted that she cooks five days per week, cleans and shops weekly, and showers and dresses regularly, *id.* at 310. Plaintiff is able to watch television, listen to the radio, and socialize. *Id.* at 186, 310. In April of 2008, plaintiff reported to her therapist that, while she was not working at the time, she was "doing volunteer work such as raking and picking up things." *Id.* at 244. On April 22, 2008, plaintiff provided further elaboration, reporting to Dr. Ram that she had been performing volunteer work for social services, working in a cemetery doing yard work that included carrying, lifting, and bending, although she did note that the work caused her to experience some pain at the end of the day. *Id.* at 254. In her disability report, plaintiff also noted her ability to care for her son, feed him breakfast, get him dressed, and pick up his toys. *Id.* at 186. While plaintiff stated that she is no longer able to walk long distances or

---

[12]     Significantly, on March 27, 2008, plaintiff saw Dr. Ram complaining of a sore throat but denying any musculoskeletal symptoms. Plaintiff also denied experiencing musculoskeletal symptoms on April 2, 2009, when she again presented with a sore throat. AT 256.

pick up her son, neither of those statements is inconsistent with the ALJ's RFC determination.

Having carefully reviewed the record in this case, I conclude that the ALJ's rejection of plaintiff's claims of disabling pain is supported by substantial evidence.

### 4.    Vocational Expert

The ALJ's determination that plaintiff was not disabled at any relevant time was based upon the testimony of a vocational expert. The vocational expert's opinions, in turn, hinged upon a hypothetical question that was informed by the ALJ's RFC finding. The claimant contends that, because the underlying assumptions relied upon by the vocational expert are not supported, his opinions are thereby tainted.

It is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing. *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas*, 712 F.2d at 1553-54; *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see*

*also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability. *Varley*, 820 F.2d at 779.

When eliciting the vocational expert's testimony, ALJ Shaw posed the following hypothetical:

> First, I'd like for you to assume and [sic] individual claimant's age, educational background, and work history, who performed . . . performs work at the sedentary exertional level, but only simple tasks; with a sit-stand option; and, limited interaction with co-workers and the general public."

AT 47. Based upon that hypothetical the vocational expert opined that There exist jobs in the local and national economy capable of being performed by the plaintiff. *Id.* at 47-48. Because this hypothetical accurately reflects the ALJ's RFC finding, which I have already concluded is supported by substantial evidence, the ALJ's finding of no disability, which is based upon the vocational expert opinion, is well-supported.

## IV.  SUMMARY AND RECOMMENDATION

Contrary to the arguments now raised by the plaintiff, the ALJ did not err in failing to acquire a function-by-function physical assessment from Dr. Ram in light of the availability of other record evidence, including a medical source assessment from Dr. Beaton, plaintiff's replacement treating physician, as well as the consultative report of Dr. Ganesh. The ALJ's RFC finding concerning plaintiff's work-related limitations is properly supported by substantial evidence, and did not result from a flawed credibility assessment. Finally, the testimony of the vocational expert concerning available work that plaintiff is capable of performing was proper, given that the hypothetical question posed to him is consistent with the evidence in the case. Accordingly, it is therefore hereby respectfully

RECOMMENDED that the defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     July 30, 2013
           Syracuse, New York